UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAHMAL AHMED SMITH,

               Plaintiff,

-against-

EILEEN STACK; MELVIN C. DALERE,

              Defendants.

1:23-CV-9451 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

       Plaintiff Jahmal Ahmed Smith, of Jacksonville, Florida, who is appearing *pro se*, filed this action invoking the court's diversity jurisdiction.[1] He sues: (1) Eileen Stack, Deputy Commissioner of New York State's Office of Temporary and Disability Assistance, who oversees the administration of that office's Division of Child Support Services; and (2) Melvin C. Dalere, a Support Magistrate of the New York Family Court, Bronx County.

       The Court understands Plaintiff's complaint as asserting, under the court's federal question jurisdiction, claims of federal constitutional violations, pursuant to 42 U.S.C. § 1983, as well as claims under state law, under the court's diversity and supplemental jurisdiction.

       By order dated October 27, 2023, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the reasons discussed below, the Court dismisses this action.

---

[1] Under Rule 5.2(a)(3) of the Federal Rules of Civil Procedure, court submissions that refer to the name of a minor child must do so by using only the child's name's initials. *See* Fed. R. Civ. P. 5.2(a)(3). Under Rule 5.2(a)(2), court submissions that refer to a person's date of birth must refer only to the person's birth year and not to the exact date of birth. *See* Fed. R. Civ. P. 5.2(a)(2). Plaintiff has attached to his complaint documents that reveals a child's full name and that child's complete date of birth. Accordingly, in an abundance of caution, the Court has directed the Clerk of Court to restrict electronic access to the complaint to a "case participant-only" basis.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original). But the "special solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine

whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.* at 679.

## BACKGROUND

Plaintiff, who alleges that the events that are the bases for his claims occurred in Jacksonville, Florida, between June 30, 2009, and September 30, 2022, asserts that he "has been victimized for years by a corrupt system of judicial misconduct [by] New York family courts." (ECF 1, at 5.) Plaintiff also alleges that the defendants "have used deceptive [and] unconscionable schemes to criminally defraud the United States government by sending illegal wage with[holding] . . . document[s] to [his] place of business demanding . . . [m]oney that is not owed to the [G]overnment of the United States." (*Id.*) Plaintiff criticizes Title IV-D of the Social Security Act as "a non positive law" that "has given officers of the court the incentive to abuse their power under color of law to cause irreversible harm to [Plaintiff] and [his] family." (*Id.*) He further alleges that the defendants "have conspired to commit fraud by and through the establishment and enforcement of fraudulent child support orders that [were] . . . created with complete disregard of evidence and facts." (*Id.*)

Plaintiff has attached to his complaint a copy of an Order Terminating an Order of Support on Consent, issued on June 8, 2022, and entered on June 16, 2022, by Support Magistrate Melvin C. Dalere, of the New York Family Court, Bronx County. (*Id.* at 9.) That order referenced a January 10, 2019 order of that same court in which Plaintiff was directed to pay child support. (*Id.*) It also states that on April 21, 2022, Plaintiff filed a petition in that court to modify that court's January 10, 2019 order. (*Id.*) After noting that there had "been a change of circumstances . . . which makes . . . modification . . . necessary and proper," and that there had been an "examination and inquiry into the facts and circumstances of the case, and [a] . . . hearing [of] the proofs and testimony offered in relation thereto, and upon consent of the

3

parties," Support Magistrate Dalere terminated the January 10, 2019 order, effective April 21, 2022, "without prejudice to arrears." (*Id.* at 9-10.) In that same order, Support Magistrate Dalere also directed the appropriate Support Collection Unit "to adjust the arrears accordingly." (*Id.* at 10.)

Plaintiff alleges that, on September 30, 2022, he "received an [i]ncome with[holding] . . . letter at [his] place of business," which appears to have then been in Wisconsin.[2] (*Id.* at 6-7.) The director of human resources of his employer ("the HR director") informed him "that she [would] start garnishing [his] compensation to pay a debt to the child support enforcement agency." (*Id.* at 6.) Plaintiff states that he sent "a [c]ease and [d]esist [letter] and demanded proof of this debt," and that the HR director also requested a copy of a court order for this garnishment but [officials] . . . never sent one" (*Id.*) He also alleges that the withholding document directed withholding $950 per month from his wages, but that it was not accompanied by a court order.[3] (*Id.* at 7.) Plaintiff further alleges that Eileen Stack, Deputy Commissioner in charge of the New York State Office of Temporary and Disability Assistance's Division of Child Support Services, "is practicing law by sending [w]age withholding documents to [his] place of labor without an agreement or a signature from a judge with authority." (*Id.*) He additionally alleges that "[t]here is no contract between [him] and the agency that . . . Stack sent this document from." (*Id.*) Plaintiff states that "[w]ith this garnishment in place, [he] cannot support [his] family or pay [his]

---

[2] Plaintiff has also attached to his complaint a letter from a Support Enforcement Unit in New York, dated September 30, 2022, which informed what appears to be Plaintiff's then-Wisconsin-based employer that, as of that date, Plaintiff was $30,337.64 in arrears as to child support he owed, originating from a child support determination in a New York State court in the Bronx, New York. (ECF 1, at 11-15.)

[3] The letter from a New York Support Enforcement Unit that is attached to the complaint directs garnishment of Plaintiff's income in the amount $940.50 per month. (ECF 1, at 12.)

4

bills, [and] because of this[,] [his] credit score has dropped and [he] cannot get loans or credit cards." (*Id.*)

Plaintiff claims that multiple federal statutes, including criminal statutes, have been violated. In addition, he claims that "[t]his action against [him] is clearly [a] bill attainder." (*Id.*) In the relief section of his complaint, he seeks:

> [a]ll money returned to me that [was taken] . . . using fraudulent wage with[holding] . . . documents. [He] also ask[s] the court to find that[,] [due] . . . to the los[s] of freedoms by this action[,] . . . the court award[] [him] . . . 1,000,000 US dollars for the suffering this has caused [him] and [his] family.

(*Id.* at 6.)

## DISCUSSION

### A.  Claims on behalf of others

To the extent that Plaintiff asserts claims on behalf of members of his family, or anyone else, the Court must dismiss those claims. The statute governing appearances in federal court, 28 U.S.C. § 1654, "allow[s] two types of representation: 'that by an attorney admitted to the practice of law by a governmental regulatory body, and that by a person representing himself.'" *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007) (quoting *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1308 (2d Cir. 1991)). A nonlawyer cannot bring suit on behalf of another person. *See United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 92 (2d Cir. 2008); *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998).

Plaintiff does not allege that he is an attorney. Thus, any claims that he asserts on behalf of members of his family, or anyone else, are dismissed without prejudice.

### B.  Private prosecution

Plaintiff seems to seek the criminal prosecution of the defendants and/or others. If that is the case, the Court must dismiss his claims for such relief. Plaintiff cannot initiate a prosecution

5

in this court because "the decision to prosecute is solely within the discretion of the prosecutor." *Leeke v. Timmerman*, 454 U.S. 83, 86-87 (1981). Neither Plaintiff nor the Court can direct prosecutors to initiate a criminal proceeding against anyone because prosecutors possess discretionary authority to bring criminal actions and they are "immune from control or interference by citizen or court." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972). Accordingly, because Plaintiff lacks standing to cause the criminal prosecution of others, *see Linda R.S. v. Richard D.*, 410 U.S. 614, 618-19 (1973), the Court dismisses, for lack of subject matter jurisdiction, any claims in which Plaintiff seeks the criminal prosecution of anyone, *see* Fed. R. Civ. P. 12(h)(3); *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) ("If [a] plaintiff[ ] lack[s] Article III standing, a [federal] court has no subject matter jurisdiction to hear [his] claim." (internal quotation marks and citation omitted)).

C.   **Bill of attainder**

Plaintiff seems to assert that his obligation to pay child support arrears (child support owed that should have been paid earlier) is a bill of attainder. "A bill of attainder is 'a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without . . . the protections of a judicial trial.'" *Shenandoah v. Halbritter*, 366 F.3d 89, 92 (2d Cir. 2004) (quoting *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 468 (1977)). For example, courts consider laws "sentencing a named individual or identifiable members of a group to death, . . . imprisonment, [or] banishment, [or directing] . . . the punitive confiscation of property" as bills of attainder. *Nixon*, 433 U.S. at 473 (footnotes omitted).

Plaintiff appears to allege that he is subject to a bill of attainder because, without any judicial review, his wages are being garnished to pay his child support arrears. But he points to no legislation that has been "directed at him." *See Stone v. Pamoja House*, 111 F. App'x 624, 626 (2d Cir. 2004) (summary order); *Stevenson v. de Blasio*, No. 21-CV-5965 (AT) (JLC), 2022

6

WL 1763362, at *9 (S.D.N.Y. June 1, 2022) (holding that a local law was not a bill of attainder because it did not identify the plaintiff or any other individual for punishment), *report & recommendation adopted*, 2022 WL 3445728 (S.D.N.Y. Aug. 17, 2022), *appeal dismissed*, No. 22-2032 (2d Cir. Oct. 5, 2022) (dismissed effective Oct. 26, 2022). Rather, it seems that Plaintiff's wages are being garnished because of previous judicial proceedings, in the New York Family Court, Bronx County, that resulted in that court issuing a January 10, 2019 order directing Plaintiff to make child support payments. It also seems that Plaintiff fell into arrears with respect to approximately $30,337.64 of those payments, and that the Family Court, in June 2022, discontinued Plaintiff's obligation to make prospective child support payments, effective April 21, 2022, but *without prejudice to any child support arrears he still owed*. (*See* ECF 1, at 9-10.) The Court therefore dismisses any claim that Plaintiff has been subjected to a bill of attainder, for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### D. Claims under 42 U.S.C. § 1983 against Support Magistrate Dalere

The Court must dismiss the claims for damages and injunctive relief under 42 U.S.C. § 1983 that Plaintiff asserts against Support Magistrate Dalere. Judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 9-11 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "Even allegations of bad faith or malice cannot overcome judicial immunity." *Id.* at 209. This is because, "[w]ithout insulation from liability, judges would be subject to harassment and intimidation." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). In addition, Section 1983, as amended in 1996, provides that "in any action brought against a judicial officer for an act or

omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Judicial immunity does not apply when the judge takes action "outside" his or her judicial capacity, or when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles,* 502 U.S. at 11-12; *see also Bliven*, 579 F.3d at 209-10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

New York Family Court Support Magistrates, as New York State judicial officers, enjoy this judicial immunity, when presiding over child support proceedings. *See Acre v. Turnbull*, No. 21-642, 2021 WL 5816687 (2d Cir. Dec. 8, 2021) (summary order); *Chris H. v. New York*, 764 F. App'x 53, 55 (2d Cir. 2019) (summary order); *Legister v. Radowitz*, No. 20-CV-9330 (LLS), 2020 WL 7405672, at *5 (S.D.N.Y. Dec. 16, 2020); *Charles v. Lopez*, No. 19-CV-8706 (CM), 2019 WL 5261154, at *2 (S.D.N.Y. Oct. 15, 2019); *Roger of the Fam. Forest v. 45 C.F.R. § 75.2 IV-D Contractor Steve Banks*, No. 18-CV-10866 (CM), 2019 WL 4194332, at *4 (S.D.N.Y. Aug. 30, 2019) (collecting other district court cases within the Second Circuit).

Plaintiff seems to assert claims for damages and injunctive relief, pursuant Section 1983, against Support Magistrate Dalere, arising from: (1) an order that he issued before June 2022, including one issued on January 10, 2019, directing Plaintiff to pay child support; and (2) an order that he issued in June 2022, discontinuing Plaintiff's prospective child support payments, effective April 21, 2022, but without prejudice to Plaintiff's continuing obligation to pay child support debt that, as of April 21, 2022, he owed but had not yet paid. Plaintiff, however, fails to allege any facts showing that, in issuing those orders, Support Magistrate Dalere acted beyond

8

the scope of his judicial responsibilities or outside his jurisdiction. *See Mireles*, 509 U.S. at 11-12.

Because Plaintiff sues Support Magistrate Dalere for "acts arising out of, or related to, individual cases before him," Dalere is immune from suit for damages as to such claims. *Bliven*, 579 F.3d at 210. The Court therefore dismisses Plaintiff's claims under Section 1983 for damages against Support Magistrate Dalere because they seek monetary relief against a defendant who is immune from such relief, *see* § 1915(e)(2)(B)(iii), and, consequently, are frivolous,[4] § 1915(e)(2)(B)(i); *see Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the IFP statute].").

E.   **The *Younger* abstention doctrine**

Inasmuch as Plaintiff's child support proceedings are pending in the New York Family Court, Bronx County, this Court may not intervene in them. In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court of the United States held that a federal court may not enjoin a pending state criminal proceeding in the absence of special circumstances suggesting bad faith, harassment, or irreparable injury that is both serious and immediate. *See Gibson v. Berryhill*, 411 U.S. 564, 573-74 (1973) (citing *Younger*, 404 U.S. 37). Application of the *Younger* abstention

---

[4] The amendment to Section 1983, allowing for injunctive relief against a judge only if a state court declaratory decree was violated or state-court declaratory relief is unavailable, precludes Plaintiff from seeking injunctive relief against Support Magistrate Dalere. This is so because Plaintiff can seek review, by a Family Court Judge, of a Support Magistrate's rulings and, if unsuccessful, appeal a Family Court Judge's decision in the New York State appellate courts. *See* N.Y. Family Court Act §§ 439(e), 1112; N.Y.C.P.L.R. § 5602(a)(1), (b)(2); *see generally Berlin v. Meijia*, No. 15-CV-5308, 2017 WL 4402457, at *4 (E.D.N.Y. Sept. 30, 2017) ("Here, no declaratory decree was violated and declaratory relief is available to plaintiffs through an appeal of the state court judges' decisions in state court."), *appeal dismissed*, No. 17-3589 (2d Cir. Apr. 18, 2018) (effective May 18, 2018).

doctrine has been extended to the three following categories of state court proceedings: (1) state criminal prosecutions; (2) civil enforcement proceedings that are "akin to criminal prosecutions"; and (3) civil proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'n, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013) ("Sprint"). Courts have held that pending state child support proceedings involve at least one of the circumstances mentioned in *Sprint* in which the *Younger* abstention doctrine should be applied. *See Francis v. Dep't of Soc. Servs.*, No. 22-CV-6860, 2023 WL 5096145, at *4 (E.D.N.Y. Aug. 9, 2023) ("The merits of that appeal – challenging both the Family Court order and Francis's need to exhaust administrative remedies through [the Department of Social Services] – implicate New York's state interest in managing and enforcing child support payments."); *Perso v. Perso*, No. 19-CV-2858, 2019 WL 4415399, at *3 (E.D.N.Y. Sept. 13, 2019) (same as to ongoing divorce and child support proceedings); *Tomczyk v. N.Y. Unified Court Sys.*, No. 19-CV-2753, 2019 WL 2437849, at *3 (E.D.N.Y. June 10, 2019) (same); *Bowman v. Morris*, No. 8:19-CV-0097, 2019 WL 5150196, at *6 (N.D.N.Y. Apr. 10, 2019) ("[T]o the extent that the child support issues are continuing in Family Court, the Court should abstain from interfering with that process."), *report & recommendation adopted*, 2019 WL 3759174 (N.D.N.Y. Aug. 9, 2019); *Gravagna v. Eisenpress*, No. 19-CV-0700 (CM), 2019 WL 1469289, at *2 (S.D.N.Y. Apr. 2, 2019) ("[T]his Court must abstain under *Younger* from interfering in Plaintiff's ongoing state-court proceedings[] involving . . . child support issues and 'implicat[ing] a State's interest in enforcing the orders and judgments of its courts.'" (citation and second alteration omitted)); *Brock v. City of New York*, No. 19-CV-0957, 2019 WL 438356, at *3 (E.D.N.Y. Feb. 4, 2019) (applying *Younger* abstention to a claim in which the plaintiff asked the federal district court "to enjoin [a New York City official] from continuing to prosecute [the plaintiff's] child support obligations

in New York family court" because "actions to enforce child support orders implicate important state interests").

Plaintiff has not alleged any facts showing bad faith, harassment, or irreparable injury that is both serious and immediate has occurred with respect to his child support proceedings that are pending in the New York Family Court, Bronx County. Thus, to the extent that Plaintiff asks this Court to intervene in those pending proceedings, the Court dismisses his claims under the *Younger* abstention doctrine.[5]

### F. The *Rooker-Feldman* doctrine

To the extent that Plaintiff asks this Court to overturn a final order or judgment issued in his concluded child support proceedings in the New York Family Court, Bronx County, the *Rooker-Feldman* doctrine requires the dismissal of his claims for such relief. Under the *Rooker-*

---

[5] In 1990, in *American Airlines, Inc. v. Block*, the United States Court of Appeals for the Second Circuit instructed federal district courts to abstain from exercising federal question jurisdiction of claims involving domestic relations issues, so long as those claims could be fully and fairly determined in the state courts. *See* 905 F.2d 12, 14 (2d Cir. 1990). For example, a federal district court should abstain from exercising its federal question jurisdiction of claims in which it is "asked to grant a divorce or annulment, determine support payments, or award custody of a child." *Id.* (internal quotation marks and citation omitted). Two years after the Second Circuit issued its decision in *American Airlines*, the Supreme Court of the United States held, in *Ankenbrandt v. Richards*, that a previously recognized exception to the federal district courts' subject matter jurisdiction "divests the federal courts of power to issue divorce, alimony, and child custody decrees" in actions brought under a federal district court's diversity jurisdiction. 504 U.S. 689, 703 (1992); *see id.* at 705 (allowing for the possibility that such an exception to jurisdiction could be extended to "elements of the domestic relationship even when the parties do not seek divorce, alimony, or child custody"); *see also Donohue v. Pataki*, 28 F. App'x 59, 60 (2d Cir. 2002) (summary order) ("We agree with the district court's conclusion that it lacked jurisdiction to invalidate or otherwise review the state court's decision affirming the modification of Donohue's child support payments." (citing, *inter alia*, *Ankenbrandt*, 504 U.S. at 703)). More recently, the Second Circuit, in *Deem v. DiMella-Deem*, held that regardless of the Supreme Court's holding in *Ankenbrandt*, its own previous holding in *American Airlines* remains good law. 941 F.3d 618, 621 (2d Cir. 2019). Thus, notwithstanding whether this Court is considering this action under its original federal question or diversity jurisdiction, it must either abstain from considering, or lacks subject matter jurisdiction to consider, any request by Plaintiff to issue a decision determining whether he owes child support.

*Feldman* doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005); *see also Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 644 n.3 (2002) ("The *Rooker-Feldman* doctrine . . . recognizes that 28 U.S.C. § 1331[,] [the statute granting federal district courts' federal question jurisdiction,] is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments. . . ."); *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021) (The *Rooker-Feldman* doctrine "bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court [of the United States] is the only federal court with jurisdiction over such cases." (citing 28 U.S.C. § 1257))); *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002) ("The [*Rooker-Feldman*] doctrine reflects the principle set forth in 28 U.S.C. § 1257 that the Supreme Court [of the United States] is the only federal court that has jurisdiction to review state court judgments, unless otherwise provided by Congress, *see, e.g.*, 28 U.S.C. § 2254 (habeas corpus review)." (citation omitted)). The *Rooker-Feldman* doctrine "precludes a United States district court from exercising subject-matter jurisdiction." *Exxon Mobil Corp.*, 544 U.S. at 291. This includes when a litigant seeks relief that invites a federal district court to reject or overturn a final decision of a New York Family Court as to a child support dispute brought in that state court. *See, e.g.*, *Legister*, 2020 WL 7405672, at *3 ("A plaintiff's challenge in a federal district court to 'the validity or enforcement of [a] child support order itself' is barred by the *Rooker-Feldman* doctrine." (quoting *Sykes v. Bank of Am.*, 723 F.3d 399, 404 (2d Cir. 2013))).

District court review of claims is barred under the *Rooker-Feldman* doctrine when four requirements are met: (1) the litigant lost in state court; (2) the litigant complains of injuries caused by a final state court order or judgment; (3) the litigant invites district court review and rejection of the final state court order or judgment; and (4) the final state court order or judgment was rendered before the district court proceedings commenced. *Dorce*, 2 F.4th at 101 (internal quotation marks and citation omitted).

Inasmuch as Plaintiff criticizes any final child support decision of the New York Family Court, Bronx County, in an effort to request that this Court overturn that final decision, the *Rooker-Feldman* doctrine bars this Court from granting Plaintiff such relief. The Court therefore dismisses any claims that essentially challenge a final decision of the New York Family Court, Bronx County, arising from Plaintiff's concluded child support proceedings in that court, under the *Rooker-Feldman* doctrine, for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3); *Exxon Mobil Corp.*, 544 U.S. at 291.

**G.     Claims under Section 1983 alleging violations of procedural due process**

The Court also understands Plaintiff's complaint as asserting claims, under Section 1983, that the defendants have violated Plaintiff's right of procedural due process by illegally garnishing his wages to pay his child support arrears debt without providing him with a hearing or other means to challenge such garnishment.

The right of procedural due process only protects "against deprivations without due process of law." *Rivera-Powell v. N.Y. City Bd. of Elections*, 470 F.3d 458, 464 (2d Cir. 2006) (internal quotation marks and citation omitted). "The fundamental requisite of due process of law is the opportunity to be heard . . . at a meaningful time and in a meaningful manner." *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) (internal quotation marks and citations omitted). Determining whether the process provided is adequate requires a weighing of: (1) the private interest affected;

13

(2) the risk of erroneous deprivation and the probable value of further safeguards; and (3) the governmental interest at issue. *See Rivera-Powell*, 470 F.3d at 466 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

Generally, some kind of predeprivation process must be provided before a person's property rights are infringed upon. *See Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 299 (1981); *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003). Where that person is deprived of a property right because of a random and unauthorized act, rather than through the operation of established state procedures, however, the right of procedural due process is satisfied if the State provides an adequate postdeprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Rivera-Powell*, 470 F.3d at 465.

In the State of New York, a child support debtor is entitled to the administrative remedies outlined in Article 52 of the New York Civil Practice Law and Rules ("Article 52"). For example, when a local social services district's Support Collection Unit issues an execution for enforcement of current child support or child support arrears, but there is "an error in the amount" purportedly owed, the debtor may assert that error as a "mistake of fact" and challenge it administratively. *See* N.Y.C.P.L.R. § 5241(a)(8), (e). If the agency does not agree with the debtor's objection, the debtor may seek judicial review of the agency's determination in a proceeding brought in a state court under Article 78 of the New York Civil Practice Law and Rules ("Article 78"). *Beattease v. Washington Cnty. Support Collection Unit*, 92 A.D.3d 1037, 1038 (2d Dep't 2012); *see Phillips v. Wagner*, No. 22-CV-0833, 2022 WL 17406092, at *3 (N.D.N.Y. Nov. 4, 2022), *report & recommendation adopted*, 2022 WL 17403441 (N.D.N.Y. Dec. 2, 2022), *appeal dismissed*, No. 23-68, 2023 WL 4445323 (2d Cir. Apr. 25, 2023); *Ketan v. Lopez*, No. 20-CV-1626 (LLS), 2020 WL 3871209, at *3 (S.D.N.Y. July 9, 2020); *Basciano v.*

*Child Support Enf't Mt. Vernon Off.*, No. 19-CV-11797 (CM), 2020 WL 550569, at *3 (S.D.N.Y. Feb. 4, 2020); *Smith v. N.Y. Child Support Process Ctr.*, No. 19-CV-9266 (CM), 2019 WL 6312178, at *3 (S.D.N.Y. Nov. 25, 2019), *appeal dismissed*, No. 20-26, 2020 WL 3643569 (2d Cir. May 7, 2020).

Here, while Plaintiff alleges that state officials have illegally garnished his wages without giving him an opportunity to challenge the garnishment, those facts alone do not give rise to a claim of a procedural due process violation. State law, specifically, Articles 52 and 78, provides procedural due process to child support debtors facing garnishment. If state officials failed to comply with state law, such an omission would constitute a random and unauthorized deprivation of property. That deprivation does not, however, constitute a violation of procedural due process so long as the state provides an adequate postdeprivation remedy.

Plaintiff cannot assert that he was denied procedural due process if he never sought Article 52 administrative review or Article 78 judicial review. *Basciano*, 2020 WL 550569, at *4 (citing *Vialez v. N.Y.C. Hous. Auth.*, 783 F. Supp. 109, 113 (S.D.N.Y. 1991), and *Smith*, 2019 WL 6312178, at *3). He has alleged no facts showing that he has sought Article 52 administrative review or Article 78 judicial review, or that either remedy is inadequate. In fact, the complaint shows that Plaintiff successfully sought some sort of judicial review, and suggests that he was aware that he was in arrears as to child support that he already owed, when, in June 2022, Support Magistrate Dalere granted his petition to discontinue prospective child support payments, effective April 21, 2022, without prejudice to his pre-existing child support arrears. Accordingly, to the extent Plaintiff asserts claims under Section 1983 that the defendants have violated his right to procedural due process with regard to his child support arrears obligations,

the Court dismisses such claims for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

**H.     Title IV-D of the Social Security Act**

The Court also construes Plaintiff's complaint as asserting claims, under Section 1983, arising from the defendants' allegedly incorrect enforcement of Title IV-D of the Social Security Act ("Title IV-D"). That statutory provision underwrites States' child support collection efforts, and requires States "to establish . . . comprehensive system[s] to establish paternity, locate absent parents, and help families obtain support orders." *Blessing v. Freestone*, 520 U.S. 329, 333-34 (1997).

The Supreme Court of the United States has made clear, however, that "Title IV-D does not give individuals a federal right to force a state agency to substantially comply with Title IV-D." *Id.* at 333. "Title IV-D contains no private remedy – either judicial or administrative – through which aggrieved persons can seek redress. The only way that Title IV-D assures that States live up to their child support plans is through the . . . oversight" of the Secretary of the United States Department of Health and Human Services. *Id.* at 348; *see D.D.. ex rel. V.D. v. N.Y.C. Bd. of Educ.*, 465 F.3d 503, 511 (2d Cir. 2006) ("Because the requirement that a State operate its child support program in substantial compliance with Title IV-D was not intended to benefit individual children and custodial parents the provision did not create a federal right and, therefore, was not enforceable via § 1983." (internal quotation marks and citation omitted)); *see also Simmons v. N.Y.S. Dep't of Soc. Servs.*, No. 19-CV-3633 (CM), 2019 WL 1988673, at *3 (S.D.N.Y. May 3, 2019) ("Because there is no private right of action for an individual to bring any claim based on an alleged failure to comply with Title IV-D, the Court dismisses Plaintiff's claim invoking Title IV-D of the Social Security Act."). Thus, because Plaintiff does not have a private right of action to sue the defendants for their allegedly incorrect enforcement of Title IV-

16

D, the Court dismisses these claims for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

## I.     Remaining claims under state law under the court's diversity jurisdiction

Plaintiff invokes the court's original diversity jurisdiction but, as the Court has explained above, most of his claims are asserted under federal law, under the court's original federal question jurisdiction. To the extent that Plaintiff asserts any remaining claims under state law that the Court has not dismissed pursuant to the domestic relations exception to the court's subject matter jurisdiction, *see supra* note 5, the Court understands that such claims are raised under the court's original diversity jurisdiction.

The original subject matter jurisdiction of the federal district courts is limited and is set forth generally in 28 U.S.C. §§ 1331 and 1332. Under these statutes, a federal district court has original subject matter jurisdiction only when a "federal question" is presented or, if the plaintiff is asserting claims under state law under the court's diversity jurisdiction, when the plaintiff and the defendants are citizens of different States and the amount in controversy exceeds the sum or value of $75,000. "'[I]t is common ground that in our federal system of limited jurisdiction any party or the court sua sponte, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction.'" *United Food & Com. Workers Union, Loc. 919, AFL-CIO v. CenterMark Prop. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) (quoting *Manway Constr. Co., Inc. v. Hous. Auth. of the City of Hartford*, 711 F.2d 501, 503 (2d Cir. 1983)); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("subject-matter delineations must be policed by the courts on their own initiative").

17

To establish the court's diversity jurisdiction, a plaintiff must first show that he and the defendants are citizens of different States. *See* 28 U.S.C. § 1332(a)(1); *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998) ("A case falls within the federal district court's 'original' diversity 'jurisdiction' only if diversity of citizenship among the parties is complete, *i.e.,* only if there is no plaintiff and no defendant who are citizens of the same State."). For diversity purposes, an individual is a citizen of the State where he or she is domiciled, which is defined as the place where a person "has his [or her] true fixed home . . . and to which, whenever he [or she] is absent, he [or she] has the intention of returning." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (internal quotation marks and citation omitted). An individual "has but one domicile." *Id.*

Moreover, for diversity jurisdiction, the plaintiff must also allege to a "reasonable probability" that his claims are in excess of the sum or value of $75,000, the statutory jurisdictional amount. *See* § 1332(a); *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) (citation and internal quotation marks omitted). The sum claimed by the plaintiff will control if the amount is claimed in good faith. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938). It is the Court's duty, however, to dismiss an action where it is "convinced to a legal certainty that the plaintiff cannot recover an amount in excess of the [minimum statutory jurisdictional amount.]" *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994) (quoting *Deutsch v. Hewes St. Realty Corp.*, 359 F.2d 96, 98 (2d Cir. 1966)) (alteration in original, internal quotation marks omitted).

Plaintiff alleges that he is a citizen of the State of Florida, and that Deputy Commissioner Stack is a citizen of the State of New York (ECF 1, at 2-3); he does not specify the state citizenship of Support Magistrate Dalere. In addition, and more importantly, even if Plaintiff did

specify the state citizenship of Support Magistrate Dalere and alleged facts showing that the parties are diverse, Plaintiff has not alleged facts sufficient to show that his claims under state law exceed the sum or value of $75,000, the statutory jurisdictional amount for the court's original diversity jurisdiction.

In the relief section of his complaint, Plaintiff requests that an unspecified amount of money be returned to him that, he alleges, was taken from him due to "fraudulent wage with[holding] documents," and he seeks an additional $1,000,000 in damages, yet his claims appear to arise from only $30,337.64 in child support arrears. (*See id.* at 6, 11-15.) Accordingly, to the extent that Plaintiff asks this court to consider any remaining claims under state law not dismissed above, under the court's original diversity jurisdiction, the Court dismisses such claims for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

### J.     Remaining claims under state law under the court's supplemental jurisdiction

While the Court cannot consider Plaintiff's remaining claims under state law under the court's original diversity jurisdiction, the Court could consider them under its supplemental jurisdiction. A federal district court may, however, decline to exercise supplemental jurisdiction of claims under state law when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of [supplemental] jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted). In addition, "[i]n the absence of diversity jurisdiction, because the Court has dismissed the federal claims brought in this action, it may decline to exercise supplemental jurisdiction pursuant to . . . [Section] 1367(c)(3)." *Golub v. Berdon LLP*, No. 19-CV-10309 (JGK), 2021 WL 637974, at *5 (S.D.N.Y. Feb. 17, 2021). Having dismissed the claims of which the Court has original jurisdiction, the Court declines to exercise its

supplemental jurisdiction of any remaining claims under state law that Plaintiff may be asserting. *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

**K.      Leave to amend**

Federal district courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend his complaint.

## CONCLUSION

The Court dismisses this action for the reasons set forth in this order.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to enter a judgment dismissing this action.

SO ORDERED.

Dated:   January 2, 2024
         New York, New York

                                             /s/ Laura Taylor Swain
                                             LAURA TAYLOR SWAIN
                                             Chief United States District Judge